**CENTURY HOMES OF KNOXVILLE, INC., Plaintiff-Appellant,**

v.

**ASSOCIATED SUNBELT REALTORS, INC., et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 4, 1981.

Certiorari Denied by Supreme Court June 1, 1981.

Bernard E. Bernstein, Doris C. Allen, with Bernstein, Susano, Stair & Cohen, Knoxville, for plaintiff-appellant.

Robert L. Crossley, with Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, Thomas J. Ward and Michael A.

Grow, with Ward, Lalos, Leeds, Keegan & Lett, Washington, D. C., for defendants-appellees.

## OPINION

SANDERS, Judge.

This case involves a dispute over a trade name. Plaintiff-Appellant, Century Homes of Knoxville, Inc., filed suit against the Defendant-Appellee, Associated Sunbelt Realtors, Inc., and some 13 other Defendants. The complaint seeks to enjoin the Defendants from using the name "Century 21" preceding the corporate or trade names of the respective Defendants.

Since 1962 the Plaintiff has been building and selling homes in Knox County under the trade name of Century Homes. The Defendants are all real estate brokers in or around Knox County. In the summer of 1978 they became franchisees of Century 21 Realty Corporation which is a California-based company which franchises real estate brokers throughout the United States and Canada. As a part of the franchise agreement the franchisee is required to precede its corporate or trade name with "Century 21" in letters five times larger than the corporate or trade name. In June, 1978, the Defendants all started using "Century 21" as a prefix to their names and they also started an extensive advertising campaign. Considerable confusion arose as the result of people's associating the name "Century 21" with "Century Homes."

Upon the trial of the case the chancellor found the issues in favor of the Plaintiff but restricted the Defendants' use of the name "Century 21" only in newspaper advertising and in classified display advertising in the South Central Bell Telephone directories in Knox County. The restriction placed on this advertising is:

"(a) Any use of the term 'Century 21' shall follow each said defendant's remaining corporate or individual name; and

"(b) All letters used in each such defendant's remaining corporate or individual name shall not be smaller than the largest letter or figure in the words 'Century 21'; and

"(c) Any color used in each said defendant's remaining corporate or individual name shall not be less prominent then the color used in printing the words and figures 'Century 21'; and

"(d) The type face used in each said defendant's remaining corporate or individual name shall not be less prominent than that used for the words 'Century 21'."

The Plaintiff has appealed, insisting that the restriction on the use of the name "Century 21" is too narrow; that the restrictions placed on newspaper and telephone directory advertising should have been made applicable to all forms of advertising. The Plaintiff does not seriously complain about the Defendants' being permitted to continue to use the word "Century" as a part of their names within the guidelines set out for newspaper advertising. The Defendants have not challenged the chancellor's ruling, so this leaves for consideration the narrow question of whether or not the chancellor's injunction was broad enough.

The chancellor filed an excellent 17-page memorandum opinion covering all aspects of the proof in the record. The following are portions of the chancellor's memorandum opinion:

"Century 21 provides the local franchisees various selling tools, such as brochures, door hangers, door mats, business cards, magnetic door signs, yard signs, and miscellaneous advertising literature and pieces, all of which in some manner or means incorporate the Century 21 name and logo."

\* \* \*

"Plaintiff contends that defendants' use of the Century 21 name as it is now being used constitutes unfair competition and infringes upon its prior use of the name Century Homes. From June 4, 1978 until December of 1978, plaintiff received at its office a large number of telephone calls, totaling some 90, from which it can be fairly inferred and concluded that people seeking Century 21 franchisees were calling plaintiff under the impression that Plaintiff, Century Homes, was either the fran-

chisee sought or in some way connected with a Century 21 franchisee. The plaintiff contends, and we think that a reading of names themselves, Century Homes and Century 21, would lead to a conclusion that there could be some confusion in the market place between plaintiff and defendant with respect to the use of the word 'Century'. . . . .

"The evidence doesn't establish that the plaintiff and defendants are in full competition in all aspects of their business. The evidence does establish that they are in competition, head to head in a certain area, however, and that is in finding buyers for homes and in finding prospective buyers for homes. Both plaintiff and defendants sell homes in the 50 to 60 thousand dollar market. Under all of the evidence, it is fair to conclude and I think must be concluded that there is a fierce competition for purchasers of homes and the opportunity to show homes to prospects. . . . . In order for plaintiff to have any rights in such a name the evidence must establish that it has developed what is called a secondary meaning. The evidence on the subject in this case is convincing that Century Homes and the use of 'Century' in that name has caused and created a secondary meaning in the field of construction and sale of homes in Knox County. The evidence that a very substantial number of calls intended apparently for Century 21 franchisees ended up with Century Homes is most convincing evidence of the existence of a secondary meaning. . . . ."

\* \* \*

"We think that it has been shown that Century Homes has regularly and continuously advertised under the name Century Homes; that confusion developed substantially when Century 21 began using that name in this area. And that there is a fair likelihood that prospects will be diverted from plaintiff to people using Century 21. . . . .

\* \* \*

"We think that the unfairness involved in addition to any confusion arises in particularly newspaper advertising, which plaintiff relies on almost exclusively, the advertising is conducted in the classified section of the local newspapers. And it is apparent from those newspapers advertisements the various people selling houses are using names and logos, and that sort of thing to attract the prospective buyers to buy and to attempt to have them deal with them. The plaintiff has established, we think, a prior right to the use of the word 'Century' that should not be taken advantage of or played upon unfairly by the defendants. We think that Century Homes should also have some protection against assuming and having the burden of the hazards of defendants' businesses and the methods by which they may operate not visited upon the plaintiff."

We concur with the findings of the chancellor and we concur with the restrictions the chancellor placed upon newspaper and telephone directory advertising. However, we think the proof and the findings of the chancellor entitle the Plaintiff to broader protection. In limiting the extent to which the use of "Century 21" should be used, the court said: "Now, in awarding relief in a case such as this, we must keep in mind that the relief should not exceed that warranted under the circumstances. The *Kay Jewelry Company* case clearly points this out. In that case the Court indicated that the defendant could use the full name Ray Barrett, which would not result in confusion. We've considered the means by which the plaintiff advertises in the newspapers and the evidence with respect to primacy and that sort of thing and we have considered the fact that all of the defendants operated under their own names prior to using the Century 21 name. We think that the defendants should not be prohibited from operating under the name Century 21, however, in certain respects we think that that trade name 'Century 21' should be restricted or limited in use. We think the use should be restricted in the newspapers. We are not going to restrict the use on signs at homes being offered by defendants for sale because we do not see how that could cause any real competitive problems for the plaintiff. The problem for the plaintiff is caused in the newspapers."

Although the proof shows that most of the Plaintiff's advertising is in the newspapers, we don't think that is controlling. It is the advertising of the Defendant that is causing the confusion. The purpose of granting injunctive relief is to avoid confusion to the public. Since we have held that the Plaintiff has developed a secondary meaning in the name and has a prior right to the name, it is entitled to have it protected from all types of advertising that will generate confusion. Of the some 90 misdirected telephone calls which the Plaintiff received between June and December there is no way of determining just how many resulted from newspaper advertising, telephone directory advertising, yard signs, billboards or other forms of advertising used by the Defendants. However, we think it is clear that a high percentage of the calls were not generated by either newspaper or telephone directory advertising. Since it has been determined that confusion stems from the similarity of the names, we think logic dictates it will continue whether the names appear in the newspaper, on billboards, yard signs or any other form of advertising and the decree of the chancellor should be modified so as to avoid all confusion.

The decree of the chancellor is modified to extend the restrictions placed on newspaper and telephone directory advertising to all forms of advertising. To the extent the chancellor's decree is not modified, it is affirmed. The case is remanded for the entry of a decree in keeping with this opinion. The cost of this appeal is taxed to the defendants.

PARROTT, P. J., and FRANKS, J., concur.